# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.E.**

**No. 23-209** (Mingo County CC-30-2022-JA-21)

## MEMORANDUM DECISION

Petitioner Mother S.M.[1] appeals the Circuit Court of Mingo County's March 14, 2023, order terminating her parental rights to D.E.,[2] arguing that the circuit court erred by not granting her an improvement period and terminating her parental rights. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision reversing the circuit court's March 14, 2023, dispositional order and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirements of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

In March 2022, the DHS filed a petition for abuse and neglect against the petitioner alleging that, while the petitioner was incarcerated, she gave birth to a child experiencing withdrawal symptoms. Additionally, the petition alleged that the petitioner tested positive for methamphetamine during a prenatal care visit in December 2021. The petitioner's parental rights to two older children had been involuntarily terminated in two earlier proceedings as a result of the petitioner's drug use after both children were also born drug affected.

At a preliminary hearing held in March 2022, a Child Protective Services ("CPS") worker testified that the child, D.E., tested positive for Suboxone at birth and suffered withdrawal symptoms. She further testified that, at a prenatal care visit in December 2021, the petitioner admitted to using methamphetamine and fentanyl and tested positive for methamphetamine. The worker testified that the petitioner also reported that if she were to be released from incarceration,

---

[1] The petitioner appears by counsel Susan J. Van Zant. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew Waight. Counsel Diana Carter Wiedel appears as the child's guardian ad litem.

[2] Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

she did not have a place to stay. The circuit court found that there was probable cause to believe that the petitioner abused and neglected the child, that the child was in imminent danger, and that there was no less restrictive alternative than removal of the child from the petitioner's care and custody.

On July 26, 2022, the petitioner filed a motion for a preadjudicatory improvement period, explaining that she entered a long-term inpatient substance abuse treatment program at Mending Fences on May 27, 2022. The petitioner provided a progress report from the facility with the motion, confirming her participation in the program. The report further explained that the petitioner was participating in counseling, substance abuse treatment meetings, classes, and had passed all of her drug screens.

The circuit court held an adjudicatory hearing in August 2022, where it took judicial notice of the testimony and evidence taken at the preliminary hearing. The petitioner appeared by counsel. Based on the prior testimony and evidence, the circuit court adjudicated the petitioner as a neglectful parent. The petitioner then moved for a post-adjudicatory improvement period, arguing that she continued to do well in her rehabilitation program at Mending Fences. The court concluded the hearing without ruling on the motion.

Later, on October 4, 2022, the petitioner filed a written motion for a post-adjudicatory improvement period, to which she attached a progress update from Mending Fences. The progress update reported that the petitioner continued to participate in the program and complied with all meetings and counseling and added additional dates of clean drug screens. The progress update further reported that the Mending Fences program expected to close by October 31, 2022, and that the petitioner would seek continued treatment with another program prior to that date. Thereafter, two dispositional hearings were rescheduled due, in part, to the DHS's failure to timely file a case plan. Orders from these hearings noted the petitioner's pending motions for a post-adjudicatory improvement period.

On November 22, 2022, a letter from the YWCA WIND Program to the multidisciplinary team ("MDT") was filed with the court, explaining that after the closing of Mending Fences, the petitioner joined their treatment program and became a resident at a sober living facility. The letter further explained that the petitioner would be required to attend therapy and support classes, obtain employment, complete weekly community service hours, and attend ninety substance abuse meetings in ninety days, among other requirements. The letter stated that the petitioner was doing well in her transition and maintained negative drug screens. Based on her success in the new program, the petitioner filed a written motion for a post-dispositional improvement period in December 2022. After further continuance of the dispositional hearing that same month, the court received another letter on February 1, 2023, indicating that the petitioner continued testing negative on drug screens, complied with therapy and classes, and completed ninety support meetings in ninety days. The letter also explained that she secured full-time employment beginning on January 5, 2023.

The circuit court held a dispositional hearing on February 1, 2023. At the onset of the hearing, the petitioner's counsel alerted the court to the outstanding motions for an improvement period. The court held the motions in abeyance and proceeded to take testimony and evidence. A

CPS worker testified that the petitioner's rights had previously been terminated to two children and that the DHS recommended termination of her parental rights. The worker further admitted to being aware that the petitioner was participating in a rehabilitation program but stated she never contacted anyone to inquire about the petitioner's progress. The petitioner testified to her attendance and progress in the substance abuse rehabilitation program. She reported that she regularly attended seven NA and AA meetings weekly and would graduate from the program in April. She acknowledged her prior history with addiction and prior terminations of her parental rights, but further testified that she had demonstrated success in her current program since May 2022 and that she had not tested positive on any drug screens since she began treatment. Finally, she testified that she continued to work full-time and had been offered a manager's position.

The circuit court entered on order on March 14, 2023, following the dispositional hearing. The court found that the petitioner had two prior terminations of her parental rights, both involving drug use during her pregnancies. The court further found that the petitioner was presently unwilling or unable to correct the conditions of abuse and/or neglect that necessitated the removal of the child and that there was no reasonable likelihood the petitioner could correct the conditions in the future. The court then terminated the petitioner's parental rights to the child and denied any post-termination visitation.[3] Despite that ruling, the court also granted the petitioner a post-dispositional improvement period. The DHS later asked the court to clarify that apparent discrepancy. By an order entered on May 21, 2023, the court stated that the previous termination of the petitioner's parental rights remained in full force and effect and denied the petitioner's motion for a post-dispositional improvement period. Although the court's March 14, 2023, order denied post-termination visitation, the May 21, 2023, order stated that the petitioner may request visitation from the court at a later date. It is from the March 14, 2023, dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). We have long held that,

> "[a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 1, in part. With those standards in mind, we turn to the petitioner's arguments.

---

[3] The father's parental rights were also terminated. The permanency plan for the child is adoption in the current placement.

First, the petitioner argues that the circuit court erred by terminating her parental rights.[4] Termination of parental rights, the most restrictive dispositional outcome, is authorized only "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." W. Va. Code § 49-4-604(c)(6). While the circuit court made this finding below, the evidence at disposition did not support such a finding. Tellingly, the only basis for the court's finding was evidence of the petitioner's conduct *before* the filing of the petition,[5] while the record overwhelmingly demonstrates that all of the petitioner's conduct *after* the filing of the petition indicates that she has been successful in her efforts to remedy the issue for which she was adjudicated. Here, there is no evidence to support the circuit court's finding that termination was warranted, and no review of the record renders it plausible. On the contrary, it appears that the court ignored relevant evidence of the petitioner's capacity for improvement and, importantly, steps she had already taken to correct the conditions of neglect that led to the filing of the petition.

Finally, this Court cannot properly review the petitioner's assignment of error regarding the circuit court's failure to grant an improvement period given the absence of a ruling on the petitioner's motions below. Although motions for improvement periods are generally left to the circuit court's discretion, this Court is unable to undertake a proper review of the petitioner's assignment of error in the absence of adequate findings. *See In re Edward B.*, 210 W. Va. at 632, 558 S.E.2d at 631 ("Adequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court."). Below, the court waited until *after* it terminated the petitioner's parental rights to summarily deny her motions. On remand, we instruct the circuit court to address the petitioner's motions for a post-adjudicatory improvement period and post-dispositional improvement period and to make sufficient findings of fact and conclusions of law supporting its ruling.

For the foregoing reasons, we reverse the circuit court's March 14, 2023, order terminating the petitioner's parental rights, and remand the matter with instructions for the circuit court to hold a new dispositional hearing, as well as any further proceedings consistent with this memorandum

---

[4] In addition to the petitioner's two assignments of error we address here, she alleged a third assignment of error that the circuit court "should have conducted a balancing test following an evidentiary hearing prior to denying post termination improvement period." However, in the argument section of the petitioner's brief, she does not make any argument regarding a "balancing test" and does not cite any legal authority in reference to this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of . . . law presented . . . and citing the authorities relied on." Because the petitioner failed to comply with this rule, we decline to address this assignment of error.

[5] West Virginia Code § 49-4-604(d) sets forth when parental rights may be terminated, that is, when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child . . . ." A finding made pursuant to West Virginia Code § 49-4-604(c)(7)(C) that a parent's rights have previously been terminated involuntarily, is distinct, and relieves the DHS of the obligation to make reasonable efforts to preserve the family.

4

decision, including any proceedings necessary for evaluations of the petitioner's motions for improvement periods. The Clerk is directed to issue the mandate contemporaneously herewith.

Reversed and remanded, with directions.

**ISSUED**: May 13, 2024

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Chief Justice Tim Armstead
Justice C. Haley Bunn

Armstead, Chief Justice, and Bunn, Justice, dissenting:

We dissent to the majority's resolution of this case. We would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, we believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, we respectfully dissent.